UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| M.W. PRINCE HALL GRAND LODGE, FREE AND ACCEPTED MASONS OF LOUISIANA, INC. | CIVIL ACTION<br><br>NO. 24-1364 |
| VERSUS | SECTION M (3) |
| CONFERENCE OF GRAND MASTERS PRINCE HALL MASONS, INC., *et al.* | |

## ORDER & REASONS

Before the Court is a motion to dismiss pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure filed by defendants the Conference of Grand Masters Prince Hall Masons, Inc. (the "Conference"), Eugene Anderson, Jr., Jeffery G. Jones, Emanuel J. Stanley, Victor C. Major, Maurice F. Lucas, Ronald Davie, Timothy R. Seay, Corey D. Hawkins, Sr., Laurice Lamont Banks, Noel C. Osborne, Sr., Michael T. Anderson, Mark McGraw, Paul A. Hibner, and Robert M. Estelle (collectively, "Defendants").[1] Plaintiff M.W. Prince Hall Grand Lodge, Free and Accepted Masons of Louisiana, Inc. ("Plaintiff") responds in opposition,[2] and both sides reply in further support of their positions.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting the motion to dismiss for lack of personal jurisdiction.

**I.  BACKGROUND**

This case concerns a dispute between a grand masonic lodge and a conference, or association, comprised of similar masonic lodges throughout the country and world "that adhere

---

[1] R. Doc. 24.
[2] R. Doc. 29.
[3] R. Docs. 30; 34.

to the customs and usages uniquely and commonly practiced by the general membership of the Prince Hall Masons Inc. sodality and that meet the requirements established by the [C]onference."[4] Plaintiff was organized as a grand masonic lodge on January 5, 1863, in New Orleans, Louisiana.[5] In 1869 it was incorporated by an act of the Louisiana legislature.[6] Plaintiff currently has lodges and members in other states as well as Louisiana.[7] Plaintiff was one of the founding members of the Conference, a Delaware corporation, which governs its members' conduct through its constitution.[8]

Plaintiff alleges that in May 2023, the Conference held its annual meeting in New Orleans at which it voted to suspend Plaintiff from the Conference's membership rolls, apparently because Plaintiff chartered and operated lodges in states other than Louisiana.[9] To end the suspension, Plaintiff would have had to cancel its charters and contracts with these lodges outside of Louisiana.[10] Plaintiff did not do so.[11] Then, in May 2024, the Conference held its annual meeting in Charlotte, North Carolina, at which it voted to remove Plaintiff from the Conference's membership and declare it to be an "irregular" masonic lodge.[12]

Shortly after, also in May 2024, Plaintiff filed this action against the Conference and 14 individual defendants who apparently hold office or other positions of authority within the Conference, alleging that by declaring Plaintiff "irregular," Defendants are interfering with

---

[4] R. Doc. 5 at 4-8, 23-31 (quotation at 24).
[5] *Id.* at 4.
[6] *Id.* at 5.
[7] *Id.* at 6. The Conference's constitution is attached to, and frequently quoted and otherwise referenced in, the complaint, so its provisions may be considered by the Court along with the allegations in the complaint. *See Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[8] *Id.*
[9] *Id.* at 7.
[10] *Id.*
[11] R. Doc. 24-1 at 2-3.
[12] R. Doc. 5 at 8.

2

Plaintiff's ability to operate as it sees fit.[13] In its complaint, Plaintiff asserts claims, presumably under Louisiana law, for tortious interference of commerce, unfair competition, conspiracy to commit unfair competition, tortious interference with contract, conspiracy to commit tortious interference with contract, and defamation.[14]

## II.   PENDING MOTION

Defendants filed the instant motion to dismiss, arguing that this Court lacks personal jurisdiction over the Conference and the 14 individual defendants, the suit is filed in an improper venue, and Plaintiff fails to state a plausible claim for relief.[15]  As to personal jurisdiction, Defendants argue that none of them are subject to general jurisdiction in Louisiana because none of them are Louisiana domiciliaries, corporations, or otherwise "at home" in the state.[16] They also argue that specific jurisdiction is inapplicable because Plaintiff's claims arise out of the Conference vote finding Plaintiff to be "irregular," which vote was taken in North Carolina.[17]  In other words, there is no allegation in the complaint that Defendants purposefully directed their actions at Louisiana and that Plaintiff's alleged injuries arose out of those activities.[18]  Defendants next argue that venue does not lie in this Court because Plaintiff did not sufficiently allege that a substantial part of the events giving rise to its claims occurred within the district.[19]  Finally, Defendants, assuming that Louisiana law applies and without engaging in a choice-of-law analysis, argue that

---

[13] R. Docs. 1; 5.
[14] R. Doc. 5 at 8-17.  As it is unnecessary to the resolution of the pending motion, the Court does not offer an opinion as to whether the purported claims are cognizable under Louisiana law or any other potentially applicable law.  Nor does the Court undertake a choice-of-law analysis, especially as the parties have not done so.
[15] R. Doc. 24.
[16] R. Doc. 24-1 at 5-7.
[17] *Id.*
[18] *Id.* at 7.
[19] *Id.* at 7-8.

3

Plaintiff fails to state a plausible claim for relief under any theory alleged and that Plaintiff is not entitled to punitive damages or attorney's fees.[20]

In opposition, Plaintiff argues that the Conference is subject to specific jurisdiction in Louisiana because it purposefully availed itself of conducting business in the state when it planned and held its 2023 annual meeting in New Orleans.[21] Plaintiff also asserts that the 14 individual defendants attended this meeting and directed their activities at Louisiana by staying at a hotel in the state.[22] According to Plaintiff, the Defendants "used the forum of Louisiana to oust, demean and embarrass [Plaintiff]," and "[t]his suit commenced because of these actions."[23] Plaintiff further argues that the Conference's actions at its 2024 annual meeting in North Carolina, where the vote to deem Plaintiff "irregular" was taken, constituted an action directed at Louisiana because that is where the effect of this act was felt.[24] As to venue, Plaintiff argues that a substantial part of the events giving rise to the suit occurred at the 2023 meeting in New Orleans, including the suspension and initiation of allegedly defamatory social media posts.[25] Finally, without undertaking a choice-of-law analysis, Plaintiff contends that it has stated claims under Louisiana law for tortious interference with commerce, unfair competition, and defamation.[26]

Defendants reply, arguing that specific jurisdiction must be analyzed on a claim-by-claim basis, and Plaintiff failed to demonstrate that there is specific jurisdiction over the Conference or

---

[20] *Id.* at 8-15.
[21] R. Doc. 29 at 2.
[22] *Id.* at 3.
[23] *Id.*
[24] *Id.* at 3-4.
[25] *Id.* at 7.
[26] *Id.* at 8-14. In its opposition to the motion, Plaintiff does not present any arguments regarding its claim for tortious interference with contract, the related conspiracy allegation, or its punitive damages and attorney's fees claims. *See* R. Doc. 29. In its surreply, Plaintiff says that it did address the claim for tortious interference with contract, but such argument is nowhere to be found in Plaintiff's opposition memorandum. *See* R. Docs. 29; 34. Because Plaintiff failed to respond to Defendants' motion to dismiss its claim for tortious interference with contract, the related conspiracy allegation, and the punitive damages and attorney's fees claims, those claims are deemed abandoned. *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022) ("A plaintiff abandons claims when it fails to address the claims or oppose a motion challenging those claims.").

any individual defendant as to any of Plaintiff's remaining claims.[27] Defendants say that Plaintiff's claims arise from actions that occurred in North Carolina, not Louisiana, because Plaintiff contends that the Conference never formally communicated the 2023 suspension to Plaintiff, Plaintiff did nothing to address the situation once it learned of the suspension, and most critically, the crux of Plaintiff's claims is that Defendants interfered with Plaintiff's business and defamed Plaintiff only after the 2024 vote deeming Plaintiff "irregular."[28] Defendants also point out that none of them made any of the allegedly defamatory social media posts attached to the complaint.[29] And Defendants reurge that Plaintiffs have not stated claims for tortious interference with commerce, unfair competition, or defamation.[30]

In its surreply, Plaintiff reasserts its contention that Defendants' actions at the 2023 annual meeting in New Orleans constitute "the initial act that gave rise to this litigation" because the Conference used that act as a basis to declare Plaintiff "irregular."[31] Plaintiff then states that the Conference declared it "irregular" in 2024 to "damage [Plaintiff's] reputation and continue interference with a sovereign Grand Lodge."[32]

### III.  LAW & ANALYSIS

"As a general rule, when the court is confronted by a motion raising a combination of Rule 12(b) defenses, it will address the jurisdictional issues before considering whether a claim was stated by the complaint, although there is no requirement that jurisdictional issues be considered in a particular order." 5B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & A. BENJAMIN SPENCER,

---

[27] R. Doc. 30 at 2-5.
[28] *Id.* at 3-4.
[29] *Id.* at 4.
[30] *Id.* at 6-7.
[31] R. Doc. 34 at 2.
[32] *Id.*

5

FEDERAL PRACTICE AND PROCEDURE § 1351, at 244-46 (4th ed. 2024). Therefore, the Court will first consider whether it has personal jurisdiction over Defendants.

Federal Rule of Civil Procedure 12(b)(2) confers a right to dismissal of claims against a defendant where personal jurisdiction is lacking. Personal jurisdiction is "an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (quotation and alteration omitted). When a nonresident defendant moves the court to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden to show that personal jurisdiction exists. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). The allegations of the complaint, except as controverted by opposing affidavits, must be taken as true, and all conflicts must be resolved in favor of the plaintiff. *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).

A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over the defendant, and (2) the exercise of personal jurisdiction comports with due process under the United States Constitution. *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). Because Louisiana's long-arm statute extends to the limits of due process, the two inquiries collapse into the single inquiry whether the exercise of personal jurisdiction comports with due process. *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010).

An individual's liberty interest is protected by federal due process through the requirement that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)). For purposes of personal

jurisdiction, the due-process inquiry looks at whether the defendant has purposefully availed itself of the benefits and protections of the forum state through "minimum contacts" with the forum, and whether the exercise of jurisdiction over the defendant "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The inquiry thus focuses "on the nature and extent of the defendant's relationship to the forum State." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quotation omitted).

Personal jurisdiction may be general or specific. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). For a court to exercise general jurisdiction, the defendant's contacts with the forum must be "so continuous and systematic" as to render the defendant "at home" in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citing *Goodyear*, 564 U.S. at 919). "'For an individual, the paradigm forum for the exercise of general jurisdiction is an individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'" *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear*, 564 U.S. at 924). None of the 14 individual defendants is domiciled in Louisiana, and the Conference is not incorporated, nor does it maintain its principal place of business, in Louisiana. Plaintiff has not presented any arguments, or evidence, to the contrary. Thus, this Court lacks general jurisdiction over Defendants.

Specific jurisdiction exists when a defendant's contacts with the forum state arise from, or are directly related to, the plaintiff's cause of action. *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 786 (5th Cir. 2021). In analyzing specific jurisdiction, courts employ a three-prong test to determine (1) whether the defendant purposefully directed its activities toward the forum, (2) whether the claim arises out of or results from the defendant's forum-related contacts, and (3) whether the exercise of personal jurisdiction is reasonable and fair. *Seville v. Maersk Line, Ltd.*,

7

53 F.4th 890, 895-96 (5th Cir. 2022).  After the plaintiff establishes the first two factors, which correspond with the "minimum contacts" prong of *International Shoe*, the burden shifts to the defendant to demonstrate that an exercise of personal jurisdiction would be unfair or unreasonable. *Burger King*, 471 U.S. at 477 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).  In determining reasonableness, a court considers "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief," *Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102, 113 (1987), as well as "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen*, 444 U.S. at 292.  Specific jurisdiction is a claim-specific inquiry, and a court must analyze each defendant's forum-related contacts on a claim-by-claim basis. *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 495-96, 500 (5th Cir. 2022) (separately analyzing personal jurisdiction for intentional tort claims and breach-of-contract claims); *see also Ecigrusa LLC v. Silver State Trading LLC*, 2022 WL 1321573, at *4 (N.D. Tex. May 3, 2022).  Here, Plaintiff purports to press three claims against Defendants – tortious interference with commerce, unfair competition, and defamation.

### A. Tortious interference with commerce and unfair competition[33]

---

[33] Both sides lump these two claims together in their respective memoranda. *See* R. Docs. 24-1 at 10-11; 29 at 10-11; 30 at 6.  The Court will follow suit.  Defendants suggest that there is no claim for "unfair competition" in Louisiana. *See* R. Doc. 24-1 at 11 ("Plaintiff gives no legal basis for a claim for 'unfair competition.'").  The Louisiana Unfair Trade Practices Act ("LUTPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. R.S. 51:1405(A).  To prevail on a LUTPA claim, a plaintiff "must 'prove some element of fraud, misrepresentation, deception or other unethical conduct.'" *IberiaBank v. Broussard*, 907 F.3d 826, 839 (5th Cir. 2018) (quoting *Tubos de Acero de Mexico, S.A. v. Am Int'l Inv. Corp.*, 292 F.3d 471, 480 (5th Cir. 2002)).  "The range of prohibited acts under LUTPA is extremely narrow," and "a court should find a practice unfair under the statute only when the practice offends established public policy and is immoral, unethical, oppressive or unscrupulous" and undertaken "with the specific purpose of harming competition." *Id.* at 839-40 (quotations omitted).  Plaintiff's allegations in the operative complaint do not begin to plead the requisite elements of fraud, misrepresentation, deception, public policy offense, or other immoral, unethical, oppressive, or unscrupulous act.  Instead, the allegations are more limited – claiming harm to competition arising from Plaintiff being declared "irregular" and related communications said to interfere with Plaintiff's business.  As such, there appears to

Under Louisiana law, to succeed on a tortious interference with business relations claim, "a plaintiff must prove by a preponderance of the evidence that defendants improperly influenced others not to deal with the plaintiff and were motivated by actual malice in so doing." *Whitney Bank v. SMI Cos. Glob., Inc.*, 949 F.3d 196, 207 (5th Cir. 2020) (quotation omitted). Alleging that a defendant's actions affected the plaintiff's business interest is not sufficient. *Id*. Instead, "the plaintiff must allege that the defendant actually prevented the plaintiff from dealing with a third party," "that the interference was improper," and "that the defendant was motivated by spite or ill will." *Id.* (quotations omitted).

Plaintiff claims that Defendants improperly influenced others from doing business with Plaintiff by voting to declare Plaintiff an "irregular" masonic lodge.[34] That vote occurred in North Carolina, not Louisiana. In Louisiana, by contrast, the Conference, and presumably the individual defendants as its officers or members, merely voted to suspend Plaintiff's membership in the Conference. Plaintiff does not allege, or explain, how the suspension, which it could have rectified, interfered with its business. Further, Plaintiff has offered no allegations or evidence demonstrating how the Conference's contracting to hold and holding a meeting in Louisiana in 2023 constitutes an activity from which Plaintiff's alleged injury (*i.e.*, being declared "irregular" in 2024) arose. Similarly, Plaintiff does not explain how its tortious interference with business relations claim against the individual defendants relates in any way to their staying at a hotel in Louisiana. The more appropriate nexus for the supposed harm – the "irregular" vote – occurred in North Carolina in 2024. That Plaintiff brought this suit only after that vote, and not in the months after the New Orleans meeting, is telling as to what it considered the actionable conduct. Thus, this Court lacks

---

be no difference between Plaintiff's unfair competition claim and its claim for tortious interference with business relations – which, in short, explains why both sides lump these claims together.

[34] R. Doc. 5 at 7-8.

personal jurisdiction over Defendants with respect to Plaintiff's tortious interference with commerce and unfair competition claims.

2. **Defamation**

In Louisiana, the tort of "[d]efamation involves the invasion of a person's interest in his or her reputation and good name." *Fitzgerald v. Tucker*, 737 So. 2d 706, 715 (La. 1999). A defamation claim has four elements: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Johnson v. Purpera*, 320 So. 3d 374, 386-87 (La. 2021). The Louisiana supreme court has explained that "the fault requirement is generally referred to in the jurisprudence as malice, actual or implied." *Id.* at 387. "[I]n order to prevail on a defamation claim, a plaintiff must prove that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused plaintiff damages." *Id.* (quotation omitted). "If even one of the required elements of the tort is lacking, the cause of action fails." *Costello v. Hardy*, 864 So. 2d 129, 140 (La. 2004).

Here, Plaintiff claims that Defendants posted on social media that Plaintiff had been declared "irregular" in 2024 to "defame and disparage" Plaintiff.[35] Plaintiff has not demonstrated that the Conference as an organization, or any of the individual defendants, posted the allegedly defamatory remarks.[36] Regardless, even assuming that Defendants had posted the messages to social media, there is no evidence demonstrating a nexus sufficient for specific jurisdiction as there is no evidence that the social media posts were made in Louisiana, directed to a Louisiana audience (as opposed to a more general audience which could include some members who were Louisiana

---

[35] *Id.*

[36] *See id.* at 37-45 (attaching to the complaint social media posts by other persons who are not named as defendants).

residents), or relied upon Louisiana sources. *See, e.g., Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387, 397-401 (E.D. Tex. 2022) (examining the "effects test" in the social media age). Indeed, the "subject" or "source" for the "irregular" declaration necessarily would have been more connected to the vote that occurred at the 2024 meeting in North Carolina, than to the 2023 meeting held in New Orleans. Hence, Plaintiff has not proved that this Court has personal jurisdiction over any of the Defendants as to its defamation claim either.

IV.   **CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendants' motion to dismiss (R. Doc. 24) is GRANTED, and Plaintiff's claims are DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction.[37]

New Orleans, Louisiana, this 8th day of August, 2024.

                                                       BARRY W. ASHE
                                                       UNITED STATES DISTRICT JUDGE

---

[37] Given this disposition, the Court need not and does not address Defendants' arguments concerning subject-matter jurisdiction, venue, and the sufficiency of Plaintiff's unabandoned claims.